IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| SAMUEL A. MCCROSSIN IV, <br> MCCROSSIN'S LANDING PUB, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> CSX TRANSPORTATION, INC., <br><br> Defendant, | 2:24-CV-01018-MJH |

OPINION AND ORDER

Plaintiffs, Samuel A. McCrossin IV and McCrossin's Landing Pub, LLC, bring the within property action against Defendant, CSX Transportation, Inc., claiming an Easement under the Railroad Act of 1849 (Count I), Easement by Express Agreement (Count II), Easement by Implication (Count III), Quiet Title (Count IV), Ejectment (Count V), Injunctive Relief (Count VI), Private Nuisance (Count VII), and Tortious Interference with Easement Rights (Count VIII). (ECF No. 8). CSX moves to dismiss Count I, Count II, Count VII, and Count VIII pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 16). CSX also moves to strike claims for punitive and emotional distress. *Id*. The matter is now ripe for disposition.

Upon consideration of Plaintiffs' Amended Complaint (ECF No. 8), CSX's Partial Motion to Dismiss (ECF No. 16), the respective responses and briefs (ECF Nos. 17, 18, 19, 20), the arguments of counsel, and for the following reasons, CSX's Partial Motion to Dismiss will be granted, and CSX's Motion to Strike will be granted.

I.  Background

Mr. McCrossin owns 3.7335 acres of real property at 13 Edsel Lane, Forward Township, Pennsylvania (the "Property"). (ECF No. 8 at ¶ 1). Mr. McCrossin's Property consists of five

tracts conveyed to him from Edsel W. Burkholder, Jr. and Tracey Burkholder by deed dated May 16, 2017. *Id*. at ¶ 88. Mr. McCrossin claims an easement over a railroad crossing owned by CSX (the "Crossing"). *Id*. at ¶ 2. McCrossin alleges that, after acquiring the Property in 2017, he began storing excavation equipment on said Property. *Id*. at ¶ 19. McCrossin further alleges that CSX maintained the Crossing for five years. *Id*. at ¶ 20. In Spring 2022, Mr. McCrossin opened a marina and pub on the Property. *Id*. at ¶ 22. As such, many of the marina and pub's invitees used the Crossing to traverse CSX's operating rail corridor. *Id*.  Mr. McCrossin alleges that on August 11, 2022, following some resurfacing work on the Crossing by CSX, a truck operated by a business invitee became stuck on the Crossing. *Id*. at ¶ 30.  Mr. McCrossin reported the incident to CSX. *Id*. at ¶¶ 32–33.  Upon receiving notice, CSX notified Mr. McCrossin that he had no right to use the Crossing, but stated he could apply for continued use of the Crossing. *Id*. at ¶ 34. On December 6, 2022, after Mr. McCrossin refused to enter into any agreement with CSX regarding continued use of the Crossing, CSX barricaded the Crossing, allegedly to protect the public and its rail operations. *Id*. at ¶ 37.

CSX now moves to dismiss Mr. McCrossin's claims for Easement under the Railroad Act of 1849 (Count I), Easement by Express Agreement (Count II), Private Nuisance (Count VII), and Tortious Interference with Easement Rights (Count VIII).  CSX also moves to strike claims for punitive damages and emotional distress

II.     Relevant Standard

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014)

(quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief [*5] above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a prima facie case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs. Ltd.*, 2008 U.S. Dist. LEXIS 44192, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail; but rather, whether he or she is entitled to offer evidence to

establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great Western Mining & Mineral Co.*, 615 F.3d at 175).

III.    Discussion

   A. **Easement by Operation of Law under the Pennsylvania Railroad Act of 1849 (Count I)**

In his Amended Complaint, McCrossin seeks a declaration that, "as owner of the Property, he enjoys a vested right to use of the Crossing and to have the Crossing maintained by CSX, it[s] successors or assigns, to the extent of a public road pursuant to the Pennsylvania Railroad Act of 1849 . . . ." (ECF No. 8 at ¶ 92).

CSX argues that Mr. McCrossin's easement claim pursuant to the Railroad Act fails, because the Railroad Act only protected the public's right to use the Crossing. CSX maintains that the public's right to use the Crossing was terminated when, in 1996, Forward Township vacated Edsel Lane as a public road. Thus, CSX contends that, because the Railroad Act had

4

been repealed in 1978, any right to use said Crossing under the Railroad Act ended when the public road was vacated.

Mr. McCrossin contends that, under the plain language of the Railroad Act, it is the railroad company's duty to construct a crossing across a railroad to benefit the public's use of a public road. He further argues that said duty does not end if the road ceases to be public. Mr. McCrossin maintains that, had the Township's vacation of Edsel Lane resulted in closure of the Crossing in 1996, then the Township and/or the Railroad would have had to institute condemnation proceedings to compensate the loss of access to the Property.

Section 12 of the Railroad Act provided, in relevant part:

> Whenever in construction of such road or roads [railroads], it shall be necessary to cross or intersect an established road or way, it shall be the duty of the . . . said [railroad] company, so to construct the said road [railroad] across such established road or way, as not to impede the passage or transportation of persons or property along the same; and that, for the accommodation of all persons owning or possessing land through which the said railroad may pass, it shall be the duty of such company to make or cause to be made a good and sufficient causeway or causeways, whenever the same may be necessary to enable the occupant or occupants of said lands to cross and pass over the same, with wagons, carts and implements of husbandry, as occasion may require; and the said causeway or causeways, when so made, shall be maintained and kept in good repair by such company; and if the said company shall neglect or refuse, on request, to make such causeway or causeways, or when made, to keep the same in good order, the said company shall be liable to pay any person aggrieved thereby, all damages sustained by such person in consequence of such neglect and refusal; such damages to be assessed and ascertained in the same manner as provided in the last section for the assessment of damages: Provided, that said company shall, in no case, be required to make or cause to be made, more than one causeway through each plantation or lot of land, for the accommodation of any one person owning or possessing land through which the said railroad may pass; and where any public road shall cross such railroad, the person owning or possessing land through which the said public road may pass, shall not be entitled to require the company to erect or keep in repair any causeway or bridge for the accommodation of the occupant of said land.

15 P.S. § 4104 (Purdons 1967) (repealed 1978)). Pennsylvania courts have held that the term "established road" in Section 12 refers to public roads and that the purpose of this provision is to

5

prohibit railroad companies from impeding public travel. *City of Chester v. Baltimore & P. R. Co.*, 21 A. 320 (Pa. 1891); *Baltimore & O.R. Co. v. Pub. Serv. Comm'n*, 80 Pa. Super. 443, 446 (1923) ("What the act sought to preserve was the open road for the traveling public.").

Here, Mr. McCrossin's Amended Complaint only pleads a vested statutory right based upon the public road provisions of the Railroad Act. The timeline of events does not support the application of the Railroad Act to support his claimed rights. The Act was repealed in 1978. While the Act has been repealed, the Pennsylvania Superior Court has observed that "[t]he Railroad Act has continued viability, but only for rights vesting before the repeal date." *PA Energy Vision, LLC v. South Avis Realty, Inc.*, 120 A.3d 1008, 1014 (Pa. Super. 2015). Accordingly, the public's right to unimpeded travel along the public road would have continued post-1978, notwithstanding the repeal of the Act, so long as Edsel Lane remained a public road. However, Mr. McCrossin's predecessor-in-interest, the Burkholders, specifically petitioned to have Forward Township vacate Edsel Lane, whereupon Forward Township, vacated Edsel Lane in 1996. Once Edsel Lane was vacated, it ceased to be a public road, and CSX's statutory duties under the public road provisions of Section 12 of the Railroad Act ended as of 1996. *See In re City of Altoona*, 388 A.2d 313, 317 (Pa. 1978); *See Chambersburg Shoe Mfg. Co. v. Cumberland R. Co.*, 87 A. 968, 970 (Pa. 1913) (stating that when public roads were vacated by ordinance, "they ceased to exist as public streets" and they were "in no proper legal sense public thoroughfares"); *McKinney v. Pennsylvania R. Co.*, 70 A. 946, 948 (Pa. 1908) (holding that the vacation of a public road by a borough ordinance "was an abandonment of the road and the crossing by the proper public authorities."). Therefore, as a matter of law, Mr. McCrossin's Amended Complaint does not support his claimed rights of access by operation of the public road provisions of Section 12 of the Railroad Act.

Mr. McCrossin also argues that, in the case of termination of Railroad Act property rights, condemnation proceedings were necessary. Such argument lacks merit. The public road was not vacated pursuant to any eminent domain proceeding, and the vacation of Edsel Lane provided no public benefit. The property owners, the Burkholders, requested Forward Township to vacate Edsel Lane for their own benefit in order to stop public travel onto their property. Thus, the facts do not support that any property taking occurred. And, even if such were the case, which it is not, the statute of limitations for condemnation, six years, has long passed. 42 Pa.C.S. § 5527. Mr. McCrossin's arguments provide no support for his claim at Count I.

Accordingly, CSX's Motion to Dismiss Count I will be granted.

### B. Easement by Express Agreement (Count II)

In Count II, Mr. McCrossin seeks a declaration that a purported easement for use of the Crossing arose by express agreement, pursuant to the Moore Deed. (ECF No. 8 at ¶¶ 109–113). Mr. McCrossin traces title to Tract 5 back to the Moore Deed, dated June 25, 1901, recorded August 20, 1901, wherein James F.P. Moore ("Moore") conveyed two parcels of land to the Pittsburgh, McKeesport and Youghiogheny Railroad Company ("PM&Y"). (ECF No. 8 at ¶ 69). The Defendant, herein, CSX is a successor in interest to said transfer to PM&Y. The second parcel conveyed to PM&Y consisted of 0.398 acres of land, lying on both sides of the railroad. Moore conveyed this second parcel "subject to the public road as laid out upon the ground." *Id*.

CSX argues that the plain language of the Moore Deed does not demonstrate any intent to create or reserve any express easement for Moore's benefit. CSX further maintains that the Moore Deed does not include any express reservation of any easement. Further, CSX challenges Mr. McCrossin's contention that the phrase, "subject to the public road as laid out upon the ground," created an express easement within the Moore Deed. CSX asserts that, as a

7

matter of law, the language within the Moore Deed does not either create an express easement or reserve for Moore's benefit any express easement right to use the Crossing.

Plaintiffs argue that (1) the "subject to" language in the 1901 Moore Deed created an express easement, (2) the 1992 P&LE RR Deed to Burkholder confirmed the 1901 intent of the parties to the Moore Deed, and (3) the Burkholders acquired fee simple title to the land beneath the Crossing by virtue of the 1992 P&LE RR Deed.

Easements may be created by express agreement, by implication, by estoppel, or by operation of law. *Morning Call, Inc. v. Bell Atlantic–Pa., Inc.*, 761 A.2d 139, 142 (Pa. Super. Ct. 2000). Express easements are often created by deed reservation, wherein the grantor reserves a right to use the conveyed property for a certain purpose. *See Brady v. Yodanza,* 493 Pa. 186, 425 A.2d 726, 727–28 (1981). A deed that contains such a reservation imposes an easement on the conveyed tenement, which thereafter is considered the servient estate. *Id.* The owner of the property benefited by the easement (the dominant estate) may then use the servient estate for the purpose stated in the deed, regardless of subsequent divisions or transfers of ownership of the servient estate. *See id.*

Because easements represent a limitation on the rights of ownership, their creation and duration are generally construed in favor of the servient estate owner. *See Garan v. Bender*, 357 Pa. 487, 55 A.2d 353, 354 (1947); *Biber v. Duquesne Light Co.*, 235 Pa.Super. 428, 344 A.2d 628, 630 (1975); RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES §§ 2.1, 2.2, 4.1. Easements will be recognized only when the owner clearly intended to limit the rights of his or her estate. *Id*. §§ 2.2, 2.11, 7.14. And they will have effect against subsequent purchasers of the servient estate only when those purchasers had notice, either actual or constructive, of the existence of the easement. *Id*.

Here, the 1901 Moore Deed did not create any express private easement for the benefit of the Moore grantors, thus it provides no such express easement as claimed by Mr. McCrossin. First, the Moore Deed does not contain any express reservation of any easement. The Moore deed contains only the words, "subject to the public road as laid upon the ground." In *PA Energy*, the Pennsylvania Superior Court held that such language merely informed the grantee "that it took the [property] subject to whatever crossings the public may have over it." *Id*. at 1016. Further, the Superior Court held that this "subject to" language did "not create the right to establish a crossing." *Id*. Therefore, this phrase within the Moore Deed did nothing more than notify PM&Y of an existing public road. It did not create any express private easement, for which Mr. McCrossin, as successor in interest, acquired any express easement rights, nor did the deed language create any easement rights in the public.

Further, Mr. McCrossin's arguments, that the 1992 deed from P&LE Railroad, successor to PM&Y Railroad, informs that the intention of the parties to the 1901 Moore deed was to create an express easement, fails. First, there is no ambiguity in the language of the 1901 Moore deed. There is no reservation language whereby the Moore grantors retained any rights to the property, including any express private easement right. Further, there is no language to expressly grant to Moore or to the public any easement rights to the Crossing. The public's rights to traverse the Crossing arose from the status of the road as a public road. No such rights arose from any express language within the Moore deed. Therefore, absent ambiguity, which does not exist in the Moore deed, extrinsic evidence to discern intent is not admissible as a matter of law. Extrinsic evidence may only be offered to assist the court in interpreting a deed if the terms of the deed are ambiguous. *See Cunningham v. Neeld*, 47 A. 954, 955 (Pa. 1901). "Where the language of the Deed is clear and unambiguous, the intent of the grantees must be gleaned solely

9

from the deed's language." *Estate of Reigle*, 438 Pa. Super. 361, 363, 652 A.2d 853, 854 (Pa. Super. 1995)(citations omitted).

In addition, the Moore deed conveyed more land to PM&Y Railroad than just the land over which the railroad tracks were laid. By virtue of the 1901 Moore deed, PM&Y Railroad owned the land on both sides of the railroad track. As regards the 1992 deed from P&LE Railroad to Burkholders, the Burkholders's northern boundary call was to a point 30 feet south of the track as laid. P&LE Railroad retained fee ownership of that strip of land and of the Crossing. Thus, Mr. McCrossin's argument, that he owns the 30-foot strip of land, fails. Further, the language within the 1992 deed conveys land only. That deed contains no language to grant Burkholders any express easement. As discussed above for the Moore deed, the language, "subject to the public road laid upon the ground" did not create any express private easement for the benefit of the Burkholders. The 1992 deed was "made subject to any easements, agreements, utility lines, and rights of ways, that may be a matter of record or apparent on the property." (ECF No. 8-4 at p. 4). Said language merely placed the Burkholders on notice that the public road, Edsel Lane, traversed the property. As such, Mr. McCrossin, as successor to Mr. Burkholder, obtained no express easement rights as to said land or the Crossing.

For all the above reasons, Mr. McCrossin's claim of an easement by express agreement fails as a matter of law. Accordingly, CSX's Motion to Dismiss Count II will be granted.

C. **Private Nuisance Claim (Count VII)**

In Count VII of the Amended Complaint, Mr. McCrossin seeks damages resulting from CSX alleged intentional and unreasonable or reckless invasion of Mr. McCrossin's rights in the Property, including for physical injury to the Crossing, loss of business revenue, punitive damages, exacerbation of Mr. McCrossin's physical disabilities, infliction of emotional distress,

10

physical manifestations of that emotional distress, pain and suffering, and lost income resulting from the physical and emotional injury.

A private nuisance exists "when a person's conduct 'invades another's interest in the private use and enjoyment of land,' and that invasion is either intentional and unreasonable or unintentional but negligent." *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 222-23 (3d Cir. 2020) (quoting *Youst v. Keck's Food Serv., Inc.*, 94 A.3d 1057, 1072 (Pa. Super. Ct. 2014)). The Second Restatement expressly recognizes the ability of easement holders to recover for private nuisance. *See* Restatement (Second) of Torts § 821E(b); *see also Appeal of Hacke*, 101 Pa. 245, 249-50 (1882). To collect damages, a plaintiff must prove that the nuisance caused "significant harm." *See, e.g., Clark v. Fritz*, No. 1085-MDA-2015, 2016 WL 2625235, at *4 (Pa. Super. Ct. May 6, 2016) (quoting Restatement (Second) of Torts § 821F).

CSX argues that Mr. McCrossin's private nuisance claim is barred by the economic loss doctrine. Mr. McCrossin contends that, since the Pennsylvania Supreme Court decision in *Dittman v. UPMC*, 196 A.3d 1036, 1054-55 (Pa. 2018), Mr. McCrossin's private nuisance rights are not barred by the economic loss doctrine. In response, CSX argues that *Dittman* does not apply to private nuisance actions; thus, CSX contends that the economic loss doctrine still applies to bar Mr. McCrossin's private nuisance claims, because Mr. McCrossin's Amended Complaint fails to sufficiently allege the necessary element that CSX caused damage to his property.

The economic loss doctrine provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." *Am. Stores Properties, Inc. v. Spotts, Stevens & McCoy, Inc.*, 678 F. Supp. 2d 328, 333 (E.D. Pa. 2009); *see also Spivack v. Berks Ridge Corp. Inc.*, 586 A.2d 402, 405 (Pa. Super. Ct. 1990).

11

Economic loss has been defined as "damage for inadequate value, costs of repair and replacement of defective product, [and] consequential loss of property, without any claim of personal injury or damage to other property." *Palco Linings, Inc. v. Pavex, Inc.*, 755 F. Supp. 1269, 1276 (M.D. Pa. 1990).

In *Dittman v. UPMC*, 649 Pa.496, 196 A.3d 1036 (2018), the Pennsylvania Supreme Court purported to limit the economic loss doctrine's application. *Dittman* shifted to an examination of what kinds of remedies are available to the plaintiff. Under the *Dittman* test, "if the duty [that the tortfeasor breached] arises under a contract between the parties, a tort action will not lie from a breach of that duty. However, if the duty arises independently of any contractual duties between the parties, then a breach of that duty may support a tort action." *Id*. at 1054.  As one court described *Dittman*, "the central question in the application of the economic loss doctrine under *Dittman* now seems to be whether a duty between the parties was created by a contract, as opposed to tort—not merely whether the plaintiff suffered solely economic injuries. In other words, if a plaintiff has contractual remedies for her solely economic harms, she must seek those remedies in contract, not tort." *Amig v. Cnty. of Juniata*, 432 F.Supp.3d 481, 488 (M.D. Pa. 2020).

However, since *Dittman*, no Pennsylvania appellate court has limited the application of the economic loss doctrine in the private nuisance context.   Indeed, courts in this circuit continue to recognize that the economic loss doctrine bars economic loss damages in private nuisance claims. *Gerhart v. Energy Transfer Partners, L.P.*, 1:17-CV-01726, 2020 WL 6487484, at *6 (M.D. Pa. Nov. 4, 2020); *Diehl v. CSX Transp., Inc.*, 349 F. Supp. 3d 487, 506 (W.D. Pa. 2018).  Therefor, applying the economic loss doctrine to Mr. McCrossin's private nuisance claim, Mr. McCrossin needs to plead cognizable physical damages to his property or

personal injury.  However, mere denial of access to property is an economic loss that does not by itself satisfy the physical harm requirement.  *Diehl v. CSX Transp., Inc.*, 3:18-CV-122, 2019 WL 6701793, at *4 (W.D. Pa. Dec. 9, 2019).

CSX maintains that Mr. McCrossin does not plead any private nuisance claim, because there are no allegations that CSX caused any property damage or personal injuries.  Mr. McCrossin responds that, he has sufficiently alleged a physical injury to the Property and personal injuries to himself.

Here, Mr. McCrossin alleges that the erection of the barricade at the Crossing created damage to his property; however, as described above, CSX owns fee interest in the 30-foot strip of land at issue.  Therefore, the barricade, which was placed on CSX's property, did not damage any property owned by Mr. McCrossin.  Further, property damage cannot be otherwise derived from a lack of access.  Thus, Mr. McCrossin's property damage argument fails, and Mr. McCrossin has no right to claim economic damages from the blockage.

And finally, Mr. McCrossin's claims for emotional distress and physical injuries are not actionable.  Mr. McCrossin offers no facts to show that it was foreseeable to CSX that preventing access to the Crossing would cause Mr. McCrossin the attenuated emotional distress and physical injuries, alleged exacerbation of injuries from 2001 and 2006, weight gain of 37 pounds, irritability, and damaged professional relationships as a result of such irritability. (ECF No. 8 at ¶¶ 44-55).   Such allegations are irrelevant to the property dispute at issue. As such, Mr. McCrossin's alleged emotional distress and damages were not sufficiently foreseeable to support a claim for emotional distress. Said injuries are not derived from any direct contact with CSX and are not a foreseeable result of CSX barricading and restricting access.   Therefore, Mr.

McCrossin has not sufficiently pleaded any physical damage or injury to overcome the economic loss doctrine.

Accordingly, CSX's Motion to Dismiss Count VII will be granted.

### D. Tortious Interference with Easement Right (Count VIII)

CSX next argues that Plaintiffs' claim for tortious interference with Easement Rights fails because they are not entitled to the money damages sought as a matter of law. Specifically, CSX contends that Mr. McCrossin seeks to recover the same damages as his private nuisance claim, namely property damage, physical and emotional injury caused by the barricades, and loss of revenue from his businesses. Mr. McCrossin again argues that his tortious interference claims for damages are not barred by the economic loss doctrine under *Dittman*. In response, CSX contends that the economic loss doctrine argument is misplaced, because the Third Circuit has not applied the economic loss doctrine to a tortious interference claim, and instead has limited damages to said claim to "loss of rental value" and not business losses.

In *Duhring Res. Co. v. United States*, the Third Circuit recognized a cause of action for tortious interference with an easement, but held that only damages for loss of rental or use value are recoverable. 775 F. App'x 742, 749 (3d Cir. 2019). *Duhring* "predicted that the Pennsylvania Supreme Court would limit the [defendant's] liability for this tort to loss in rental value of the servitude, and would not permit recovery of lost profits." *Id.* at 747. This Court finds the reasoning of *Duhring*, albeit non-precedential, persuasive.

Here, Mr. McCrossin has not sufficiently pleaded a tortious interference claim, because his claim for damages, lost profits, physical injury, and emotional distress are not recoverable under Pennsylvania law as predicted by the Third Circuit in *Duhring*. Mr. McCrossin's only tortious interference remedy would be for loss of rental value, and his Amended Complaint fails

14

to plead the same. Absent a cognizable claim for recoverable damages, Mr. McCrossin's claim fails as a matter of law.

Accordingly, CSX's Motion to Dismiss Count VIII will be granted.

**E.  Punitive Damages**

CSX next argues that the Court should dismiss Mr. McCrossin's demand for punitive damages in his private nuisance and tortious interference claims. Specifically, CSX maintains that the Amended Complaint lacks any well-pled factual allegations to support any legal conclusion that CSX's conduct was "intentional or reckless and outrageous." Mr. McCrossin contends that he has adequately pleaded a claim for punitive damages within his private nuisance and tortious interference claims.

Initially, since both the private nuisance and tortious interference claims, Counts VII and VIII, are being dismissed herein, there is no basis for any award of damages. Thus, claims for punitive damages as to said claims are property dismissed.

 As regards Plaintiffs' claims for punitive damages as to any other counts, in Pennsylvania, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Hutchison v. Luddy,* 582 Pa. 114, 870 A.2d 766, 770 (Pa.2005) (citations omitted). Because the purpose of punitive damages is to punish a tortfeasor for his outrageous conduct and to deter other similar conduct, the actor's state of mind is vital when considering whether to impose punitive damages. *Id.* "The act, or failure to act, must be intentional, reckless, or malicious." *Id.* The Pennsylvania Supreme Court has explained that, punitive damages must be supported by sufficient evidence that "(1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in

15

conscious disregard for that risk." *Id.;* s*ee also Courtney v. Ivanov,* No. 3:13–cv–227, 2014 WL 4097351, at *7 (W.D.Pa. Aug.18, 2014).

Here, the context of the Amended Complaint does not support an evil motive or reckless indifference by CSX. This case involves a dispute over parties' respective property interests in the Crossing. Both sides raise safety issues regarding the Crossing, and Plaintiffs' use of the same.   As pleaded, the protective action taken by CSX in barricading the Crossing to protect the railroad and the public does not establish evil motive or reckless indifference to warrant punitive damages in this case.

Accordingly, CSX's Motion to Dismiss Punitive Damages within the Amended Complaint will be granted, without prejudice.

**F. Emotional Distress**

Finally, CSX moves to strike allegations of emotional distress damages and argues that such are irrelevant allegations unrelated to the subject easement dispute. (ECF No. 8 at ¶¶ 7-8, 44–55, and 148–153, and 157).  Mr. McCrossin argues that the allegations demonstrate the foreseeable consequences of CSX's intentional actions in reckless disregard for Mr. McCrossin's property rights.

The harm allegedly suffered by Mr. McCrossin is relevant only to the extent that it was foreseeable to CSX, because "the magnitude of the harm intended is a strong indicator of the maliciousness of the Defendants' conduct[.]" *Bert Co. v. Turk*, 298 A.3d 44, 78 (Pa. 2023).

Here, as analyzed above, Mr. McCrossin's alleged emotional distress and damages were not sufficiently foreseeable to support a claim for emotional distress.

Accordingly, Paragraphs 7-8, 44–55, and 148–153, and 157 will be stricken.

IV.   ORDER

Following consideration of Plaintiffs' Amended Complaint (ECF No. 8), CSX's Partial Motion to Dismiss (ECF No. 16), the respective responses and briefs (ECF Nos. 17, 18, 19, 20), the arguments of counsel, and for the foregoing reasons, it is hereby ordered as follows:

1. CSX's Motion to Dismiss, Count I Plaintiffs' claim for Easement pursuant to the public road provisions of the Railroad Act of 1849, is granted. Count I is dismissed.

2. CSX's Motion to Dismiss Count II, Plaintiffs' claim for Express Easement, is granted. Count II is dismissed.

3. CSX's Motion to Dismiss Count VII, Private Nuisance claim, is granted. Count VII is dismissed.

4. CSX's Motion to Dismiss Count VIII, Tortious Interference with Easement Rights claim, is granted.

5. CSX's Motion to Strike claims for punitive damages and emotional distress is granted.  Paragraphs 7-8, 44–55, and 148–153, and 157 are stricken.

6. Plaintiffs are granted leave to file any Second Amended Complaint on or before August 26, 2025.  CSX shall file their responsive pleading to either the Amended Complaint or Second Amended Complaint, as appropriate, on or before September 9, 2025.

DATED this 12th day of August, 2025.

BY THE COURT:

_____
MARILYN J. HORAN
United States District Judge